UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

SAMUEL SANCHEZ,

                              Plaintiff,

v.                                                                    19-CV-3567

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
et al.

                              Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CITY
DEFENDANTS' MOTION TO DISMISS AND IN REPLY IN SUPPORT
OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS..................................................................................................2

ARGUMENT ......................................................................................................................4

  I.   MR. SANCHEZ HAS STANDING TO SUE CITY DEFENDANTS.............4

  II.  CITY DEFENDANTS ARE DISCRIMINATING AGAINST MR.
SANCHEZ ON THE BASIS OF HIS DISABILITIES. .................................................9

    A.    City Defendants are discriminating against Mr. Sanchez by reason of his
disability. .......................................................................................................................10

    B.    Mr. Sanchez is "qualified" for shelter services....................................................10

      i.   Whether Mr. Sanchez meets DHS' Absolute Exclusion Criteria cannot be
determined on the pleadings. ..........................................................................................11

      ii.   DHS' Absolute Exclusion Criteria are not essential eligibility requirements
for homeless shelter placement. ....................................................................................12

    C.    City Defendants can reasonably accommodate Mr. Sanchez' disabilities. ...14

    D.    Mr. Sanchez states a claim under the Fair Housing Act. ...............................18

  III.    PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED. .....................21

    A.    Denying injunctive relief will cause irreparable harm.....................................21

    B.    The remaining preliminary injunction factors support relief.........................24

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anonymous v. Goddard Riverside Comm. Cntr., Inc., No. 96-cv-9198, 1997 WL
475165 (S.D.N.Y. July 18, 1997) ....................................................................19

Austin v. Town of Farmington, 826 F.3d 622 (2d Cir. 2016) .................................. 15, 16

Backer ex rel. Freedman v. Shah, 788 F.3d 341 (2d Cir. 2015) ........................................6

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................9

Borkowski v. Valley Cent. School Dist., 63 F.3d 131 (2d Cir. 1995) .............................15

Brooklyn Cntr. For Independence of the Disabled v. Bloomberg, 290 F.R.D. 409
(S.D.N.Y. 2012) ...................................................................................................................7

Carver v. City of New York, 621 F.3d 221 (2d Cir. 2010) ............................................ 5, 8

Clifford Ross Co., Ltd. v. Nelvana, Ltd., 710 F. Supp. 517 (S.D.N.Y. 1989) ...............24

Delfore v. City Rescue Mission of New Castle, 995 F. Supp. 2d 413 (W.D. Penn.
2013) ..................................................................................................................................20

Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110 (2d Cir. 2009) .............21

Farber v. Metro Life Ins. Co., 648 F.3d 98 (2d Cir. 2011) ...................................................9

Felix v. New York City Transit Auth., 324 F.3d 102 (2d Cir. 2003) ..............................16

Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395 (2d Cir. 2015)............9

Forziano v. Ind. Group Home Living Program, Inc., No. 13-cv-0370, 2014 WL
1277912 (E.D.N.Y. Mar. 26, 2014) ................................................................................20

Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003) ..................................................14

Hessel v. Christie's, Inc., 399 F. Supp. 2d 506 (S.D.N.Y. 2005) ......................................24

Hirschfield v. Bd. of Elections in City of New York, 984 F.2d 35 (2d Cir. 1993)........23

Hunter on behalf of A.H. v. District of Columbia, 64 F. Supp. 3d 158 (D.D.C. 2014)
...........................................................................................................................................19

Jenkins v. New York City Dep't of Homeless Services, 391 Fed. App'x 81 (2d Cir.
2010) ..................................................................................................................................20

Jenkins v. New York City Dep't of Homeless Services, 643 F. Supp. 2d 507 (S.D.N.Y.
2009) ...........................................................................................................................16, 20

Jolly v. Coughlin, 76 F.3d 468 (2d Cir. 1996)....................................................................24

Life Tech. Corp. v. AB Sciex Pte. Ltd., No. 11-cv-325, 2011 WL 1419612 (S.D.N.Y. Apr. 11, 2011)....................................................................................................22

Lowell v. Lyft, Inc. 352 F. Supp. 3d 248 (S.D.N.Y. 2018)..................................................5

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).........................................................5

Markowitz Jeselry Co., Inc. v. Chapal/Zenray, Inc., 988 F. Supp. 404 (S.D.N.Y. 1997) .......................................................................................................................23

Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322 (S.D.N.Y. 2011) .....................................23

Martinez by Martinez v. Lexington Gardens Ass's, 336 F. Supp. 3d 270 (S.D.N.Y. 2018) ........................................................................................................................17

Mary Jo C. v. New York State and Local Ret. Sys., 707 F.3d 144 (2d Cir. 2013) .. 11, 15

McElwee v. Cnty. Of Orange, 700 F.3d 635 (2d Cir. 2012) .............................................11

Mhany Mgm't, Inc. v. Cnty. of Nassau, 819 F.3d 581 (2d Cir. 2016) ...............................5

Mihalik v. Credit Agricole Chevreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013)............9

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010)............................................4

Moose Lodge No. 107 v. Irvis, 407 U.S. 163 (1972) .........................................................7

Ramos v. Uber Tech., Inc., No. 14-cv-502, 2015 WL 222414 (W.D. Texas 2015) ........8

Reg'l Economic Comm. Action Program, Inc. v. City of Middletown, 294 F.3d 35 (2d Cir. 2002).......................................................................................................15

Rodriguez v. City of New York, 197 F.3d 611 (2d Cir. 1999).........................................16

Rose v. Rhorer, No. 13-cv-03502, 2013 WL 5913656 (N.D. Cal. Oct. 31, 2013).........18

Rose v. Rhorer, No. 13-cv-03502, 2014 WL 1881623 (N.D. Cal. May 9, 2014)...........18

Rothstein v. UBS AB, 708 F. 3d 82 (2d Cir. 2013) ...........................................................6

Settlement, Butler v. City of New York, No. 15-cv-3783 (S.D.N.Y. May 15, 2017)2, 13

Steger v. Franco, Inc., 228 F.3d 889 (8th Cir. 2000).........................................................8

Step By Step, Inc. v. City of Ogdensburg, 176 F. Supp. 3d 112 (N.D.N.Y. 2016).......18

Trafficante v. Met. Life Ins. Co., 409 U.S. 205 (1972)....................................................19

U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002)..........................................................17

United States v. Vasquez, 145 F.3d 74 (2d Cir. 1988) ..........................................................5

Warth v. Seldin, 422 U.S. 490 (1975)..................................................................................5

Woods v. Foster, 884 F. Supp. 1169 (N.D. Il. 1995).........................................................20

Wright v. New York State Dep't of Corr., 831 F.3d 64 (2d Cir. 2016) ................... 15, 17

## FEDERAL STATUTES AND REGULATIONS

28 C.F.R. § 35.130 ..............................................................................................................11

28 U.S.C. § 1367 ................................................................................................................20

42 U.S.C. § 12131 .........................................................................................................11, 14

42 U.S.C. § 12188 ................................................................................................................7

42 U.S.C. § 3602(e) ...........................................................................................................19

42 U.S.C. § 3604(f) ...........................................................................................................19

## STATE CASES

Albunio v. City of New York, 16 N.Y.3d 472 (N.Y. 2011) ..................................................9

Callahan v. Carey, 307 A.D.2d 150 (N.Y. 1st Dep't 2003) .......................................passim

Consent Decree, Callahan v. Carey ..................................................................................12

## STATE STATUTES AND REGULATIONS

N.Y. Exec. Law § 259-s.................................................................................................. 3, 8

NYC Dep't of Homeless Serv., Procedure Number 15-211 (Mar. 27, 2015)........... 2, 13

## OTHER AUTHORITIES

American Heart Association, Understanding Blood Pressure Readings,
    http://bit.ly/2WJTO5i..................................................................................................22

L. Brinkley-Rubinstein, Incarceration as a Catalyst for Worsening Health, Health And
    Justice 1:3 (2013)........................................................................................................22

Peter Blanck, <u>Disability in Prison</u>, 26 S. Cal. Interdisc. L.J. 309 (2017)..........................22

Steve Coll, <u>The Jail Health-Care Crisis</u>, The New Yorker (Feb. 25, 2019) ...................22

Urban Institute, <u>Aging Behind Bars</u> (2014)......................................................................22

## PRELIMINARY STATEMENT

If New York City accommodated its disabled homeless residents, Samuel Sanchez would be free today. Instead, he remains locked inside a maximum-security prison more than three years after he was granted release to medical parole. He will continue to linger there, with his already poor health at further risk, until he finds a parole-compliant address. But given his poverty, residency restrictions, and medical needs, finding such a residence may well be impossible. Currently, the homeless shelter system, or other temporary housing through the City of New York, is Mr. Sanchez' only chance at freedom. Nevertheless, the City refuses to house individuals with disabilities like Mr. Sanchez and insists it has no obligation to do so.

City Defendants attempt to shirk responsibility for Mr. Sanchez' suffering by claiming that he lacks standing to sue them and, astonishingly, that his disabilities render him ineligible for shelter placement, even with his proposed accommodations. But Mr. Sanchez clearly alleges that City Defendants' refusal to house him has contributed to the functional denial of his medical parole grant. And Defendants offer no sound reason why providing Mr. Sanchez with a wheelchair-accessible room and home health care would "fundamentally alter" the nature of the homeless shelter system. Meanwhile, Mr. Sanchez has demonstrated the irreparable harm he faces each moment the City refuses to accommodate his disabilities. Defendants' motion to dismiss should be denied, and injunctive relief granted.

## STATEMENT OF FACTS

The City of New York is obligated to provide temporary emergency shelter to the homeless. Complaint ("Compl.") ¶ 59; Callahan v. Carey, 307 A.D.2d 150 (N.Y. 1st Dep't 2003). In administering its shelter system, the City must reasonably accommodate individuals' disabilities, including by making "modification[s]" to "policies or practices." Compl. ¶ 60; NYC Dep't of Homeless Serv., Procedure Number 15-211 (Mar. 27, 2015), http://bit.ly/2WDoHU7 ("Procedure 15-211"). Moreover, a 2017 settlement requires DHS to "provide Reasonable Accommodations on an individualized basis" for shelter applicants with disabilities "in a manner that provides for meaningful access to shelter or shelter-related services." Settlement, Butler v. City of New York, No. 15-cv-3783 ¶ 21 (S.D.N.Y. May 15, 2017), https://bit.ly/2SJLZ90 ("Butler Settlement").

New York City's homeless shelter system serves as the release plan for many parole releasees. Compl. ¶ 111. Such individuals cannot be released from prison until they secure parole-compliant housing. Id. ¶ 52. For parole grantees subject to New York's sex offender residency restriction, known as "SARA," the City's few SARA-compliant shelters are often the only possible housing option.

On May 31, 2016, Samuel Sanchez was set to be released from prison on medical parole. Id. ¶ 51. The Department of Corrections and Community Supervision ("DOCCS") had found that he is debilitatingly disabled following two strokes that rendered him permanently paralyzed and bound to a wheelchair, and that there is "a

reasonable probability" that he "does not present any danger to society." Id. ¶¶ 32-50; see N.Y. Exec. Law § 259-s (1)(a), (b).

Nevertheless, more than three years later Mr. Sanchez remains in a prison cell. DOCCS refuses to release him until he secures an approved address. However, Mr. Sanchez' poverty, disabilities, and SARA restrictions have rendered him homeless. Compl. ¶¶ 85-92. DOCCS accordingly sought Mr. Sanchez' placement in the New York City homeless shelter system. Id. ¶¶ 112-115; Declaration of Allison Frankel ("Frankel Decl.") Ex. F, Chrono at 8-10, 14-18. Yet Mr. Sanchez was repeatedly rejected from the shelter system based on a finding that he is "medically inappropriate." See id.; Compl. ¶¶ 117-119.[1] As a result, his confinement continues.

Further, the City of New York has not helped DOCCS develop or implement a "medical discharge plan" for Mr. Sanchez, even though New York law provides that the City "shall provide assistance . . . including potential placements of a releasee" when asked by DOCCS. N.Y. Exec. Law § 259-s(2)(c); Compl. ¶¶ 95-96. Nor has the City otherwise provided emergency housing assistance to him. Compl. ¶¶ 57-58, 120.[2]

Meanwhile, Mr. Sanchez' already poor health places him at risk of yet another stroke. See Compl. ¶ 42; Supplemental Declaration of Allison Frankel ("Supp'l

---

[1] City Defendants claim that DOCCS did not contact the Department of Homeless Services ("DHS") to seek a shelter placement for Mr. Sanchez until after this case was filed. See Declaration of Tonie Baez ("Baez Decl."). This presents a question of fact not resolvable on the pleadings.

[2] Whether DOCCS requested the City of New York's assistance in developing a medical discharge plan for Mr. Sanchez or requested public assistance for him are questions of fact.

Frankel Decl.") Ex. A, Blood Pressure Records. Absent relief, Mr. Sanchez may well die in prison.

## ARGUMENT

City Defendants' motion to dismiss lacks merit. First, Mr. Sanchez has plainly established standing to sue City Defendants. Second, he has plausibly alleged that City Defendants are discriminating against him on the basis of his disabilities by failing to reasonably accommodate his medical conditions. City Defendants' contention that any accommodation for Mr. Sanchez' disabilities would fundamentally alter the nature of the homeless shelter system is clearly incorrect. Additionally, the Fair Housing Act ("FHA") covers Mr. Sanchez' claims. Finally, Mr. Sanchez has demonstrated that, even under a heightened standard, preliminary injunctive relief is warranted here to allow him to benefit from his medical parole grant.

## I.   MR. SANCHEZ HAS STANDING TO SUE CITY DEFENDANTS.

City Defendants' efforts to dismiss Mr. Sanchez' claims for lack of standing are unavailing. At the pleading stage, Mr. Sanchez has plausibly alleged that New York City's failure to shelter him has contributed to his prolonged confinement.

Article III standing requires "[1] that an injury be concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010). When standing is challenged at the pleading stage, the court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the

complaining party." <u>United States v. Vasquez,</u> 145 F.3d 74, 81 (2d Cir. 1988) (quoting

<u>Warth v. Seldin,</u> 422 U.S. 490, 501 (1975)). A plaintiff must simply "allege facts that

affirmatively and plausibly suggest that [he has] standing to sue." <u>Lowell v. Lyft, Inc.</u>

352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018). The allegations "need not be crafted with

precise detail." <u>Id.</u>; <u>accord</u> <u>Lujan v. Defenders of Wildlife,</u> 504 U.S. 555, 561 (1992)

("[a]t the pleading stage, general factual allegations of injury resulting from the

defendant's conduct may suffice"). Moreover, "courts must exercise special care in

conducting a standing analysis" of claims brought under civil rights statutes such as

the Americans with Disabilities Act ("ADA") and "take a broad view of constitutional

standing." <u>Lowell,</u> 352 F. Supp. 3d at 255; <u>accord</u> <u>Mhany Mgm't, Inc. v. Cnty. of</u>

<u>Nassau,</u> 819 F.3d 581, 600 (2d Cir. 2016) (similar for FHA claims). Importantly, "[t]he

standing question is distinct from whether [the plaintiff] has a cause of action." <u>Carver</u>

<u>v. City of New York,</u> 621 F.3d 221, 226 (2d Cir. 2010).

Here, Mr. Sanchez has plausibly alleged that he has standing to sue City

Defendants. First, City Defendants agree that Mr. Sanchez is suffering a concrete,

particularized, and actual injury. However, they mischaracterize the nature of that

injury. It is not simply "remaining incarcerated after being granted medical parole,"

<u>See</u> City Defendants' Memorandum of Law Dated May 31, 2019 at 16 ("City Def.

Mem"). Rather, his injury consists of remaining incarcerated after being granted

medical parole because he lacks approved housing. City Defendants could, but refuse

to, provide him with such housing.

Second, despite City Defendants' contention, Mr. Sanchez' prolonged incarceration due to his lack of housing is fairly traceable to their actions. See id. "[A]t the pleading stage, the 'fairly traceable'" standard is "lower than proximate cause" and the plaintiff's burden is "relatively modest." Rothstein v. UBS AB, 708 F. 3d 82, 92 (2d Cir. 2013). Courts accordingly should recognize standing "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury." Backer ex rel. Freedman v. Shah, 788 F.3d 341, 344 (2d Cir. 2015).

Mr. Sanchez has plausibly alleged that City Defendants' failure to shelter him has contributed to his continued confinement beyond his medical parole release date. Mr. Sanchez will not be released from prison until he secures parole-compliant housing. See Compl. ¶ 6. Presently, no such housing exists for him, and he has been rendered homeless. Id. ¶ 110. New York City is obligated to temporarily shelter eligible homeless individuals. Id. ¶ 59; Callahan, 307 A.D.2d 150.[3] However, Mr. Sanchez has been rejected from the homeless shelter system because of his disabilities. See id. ¶¶ 115-19. Thus, he remains incarcerated. Id. ¶ 121.

City Defendants nevertheless disclaim responsibility on the grounds that Mr. Sanchez did "not allege that he applied to DHS for shelter placement or to HRA for public assistance." City Def. Mem at 17. At the pleading stage, Mr. Sanchez has plausibly alleged that he sought temporary assistance from City Defendants. Mr.

---

[3] As described infra Section II(B), Mr. Sanchez is "eligible" for homeless shelter placement.

Sanchez alleged that DOCCS, along with the Department of Health ("DOH") and the City, is responsible for developing a medical discharge plan, including housing, as well as submitting applications for public assistance. Compl. ¶¶ 54-57. Mr. Sanchez' Parolee Chrono Report ("Chrono") indicates that DOCCS had sought shelter placement on Mr. Sanchez' behalf multiple times, but that he was rejected as "medically inappropriate." Frankel Decl. Ex. F at 18-10, 14-18; see also Declaration of Lynn Cortella ¶¶ 15 (explaining DOCCS submits shelter applications). On top of this, counsel wrote to Joslyn Carter and Steven Banks on February 25, 2019 to request that the City "reasonably accommodate Mr. Sanchez' disabilities in New York City's homeless shelter system." Supp'l Frankel Decl. Ex. D; see Compl. ¶ 130. To the extent that there is a question of fact over these allegations, it cannot be resolved on the pleadings. See Brooklyn Cntr. For Independence of the Disabled v. Bloomberg, 290 F.R.D. 409, 414 (S.D.N.Y. 2012) (though "[p]laintiffs' allegations may or may not be true . . .  [they] are sufficient at this stage to establish plaintiffs' standing.").

In any event, a plaintiff need not apply for public services to allege standing in a discrimination suit. Congress made clear that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply with its provisions." 42 U.S.C. § 12188. City Defendants' citation to Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166-67 (1972) is of no moment, as that court only addressed standing to challenge membership to a private facility. See City Def. Mem at 17. Courts

addressing standing to challenge access to <u>public</u> services have reached the opposite conclusion. <u>See</u> <u>Steger v. Franco, Inc.</u>, 228 F.3d 889, 892 (8th Cir. 2000) (plaintiff need not engage in "futile gesture" of visiting non-ADA-compliant building); <u>Ramos v. Uber Tech., Inc.</u>, No. 14-cv-502, 2015 WL 222414, at *4 (W.D. Texas 2015) ("plaintiff need not have visited an establishment or requested services if the plaintiff knows doing so will result in discrimination").

Here, Chrono records stating that Mr. Sanchez was "medically inappropriate" for a homeless shelter made clear that any further application would have been "futile." <u>See</u> Chrono at 8-10, 14-18. Indeed, City Defendants' filing establishes this futility:  Upon reviewing Mr. Sanchez' application, DHS "concluded that he was medically inappropriate for a shelter." City Def. Mem. at 21. Accordingly, whether Mr. Sanchez applied for shelter placement prior to this lawsuit is immaterial.

In addition, Mr. Sanchez has plausibly alleged that City Defendants' failures to help develop a medical discharge plan may have contributed to his injuries. <u>See</u> N.Y. Exec. Law § 259-s(2)(c). City Defendants object that this duty "is owed to *DOCCS*, not Plaintiff." City Def. Mem at 16. Yet this is a "merits issue not necessary" for resolution on a threshold standing inquiry. <u>See</u> <u>Carver</u>, 621 F.3d at 226 (question of City's legal obligation was "distinct from" standing inquiry).

Finally, it is clear that this Court can redress Mr. Sanchez' harm by ordering City Defendants to shelter Mr. Sanchez, or otherwise help develop a medical discharge plan. Accordingly, Mr. Sanchez has sufficiently alleged standing.

## II.   CITY DEFENDANTS ARE DISCRIMINATING AGAINST MR. SANCHEZ ON THE BASIS OF HIS DISABILITIES.

City Defendants' motion to dismiss lacks merit. At this stage, a plaintiff simply must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must construe the complaint liberally, accept all factual allegations as true, and "draw all reasonable inferences in [Plaintiff's] favor." Farber v. Metro Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal citation and quotation marks omitted); accord Twombly, 550 U.S. at 570. Factual disputes are "inappropriate for resolution on a motion to dismiss." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 405 (2d Cir. 2015). Moreover, New York City Human Rights Law ("NYCHRL") claims must be analyzed "separately and independently from any federal and state law claims." Mihalik v. Credit Agricole Chevreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). The Court must construe "the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" Id. (quoting Albunio v. City of New York, 16 N.Y.3d 472, 477-78 (N.Y. 2011)).

Here, Mr. Sanchez has plausibly alleged that City Defendants are discriminating against him on the basis of his disabilities. First, Defendants' own admissions establish that Mr. Sanchez was only rejected from the shelter system "due to" his disabilities. Second, these disabilities do not render Mr. Sanchez "unqualified" for shelter placement. Third, Mr. Sanchez has alleged the existence of facially reasonable

accommodations for shelter placement. City Defendants' contention that <u>any</u> accommodation for his disabilities would fundamentally alter the nature of the homeless shelter system is both galling and wrong. Finally, the FHA covers Mr. Sanchez' claims. For these reasons, Defendants' motion to dismiss should be denied.

### A. City Defendants are discriminating against Mr. Sanchez by reason of his disability.

City Defendants claim that "Plaintiff cannot show that DHS discriminated against him by reason of his disability." City Def. Mem at 23. However, they provide no basis for this assertion. To the contrary, Mr. Sanchez plausibly and clearly alleges that City Defendants rejected him from the shelter system <u>solely</u> because of his disabilities. <u>See</u> Compl. ¶¶ 112-120. Indeed, City Defendants concede that the only reason they will not provide Mr. Sanchez with shelter is his disabilities. <u>See</u> City Def. Mem at 21; Baez Decl. ¶¶ 7-8. Thus, Mr. Sanchez has plausibly alleged that he is suffering discrimination "due to" his disability.

### B. Mr. Sanchez is "qualified" for shelter services.

Contrary to City Defendants' claims, Mr. Sanchez' disabilities do not render him unqualified for shelter placement. First, it is unclear whether Mr. Sanchez meets the City's formal medical exclusion criteria. Second, those criteria are not "essential eligibility requirements" for the homeless shelter system. Mr. Sanchez satisfies the "essential" shelter system requirement—needing temporary shelter—with or without a reasonable accommodation. Accordingly, he is "qualified" for shelter placement.

"A 'qualified individual with a disability' is 'an individual with a disability who,
<u>with or without reasonable modifications</u> to rules, policies, or practices. . . meets the
[program's] <u>essential</u> eligibility requirements." <u>McElwee v. Cnty. Of Orange</u>, 700 F.3d
635, 640 (2d Cir. 2012) (quoting 42 U.S.C. § 12131) (emphasis added). The "term
'essential eligibility requirements' does not refer to all formal legal eligibility
requirements." <u>Mary Jo C. v. New York State and Local Ret. Sys.</u>, 707 F.3d 144, 156-
57 (2d Cir. 2013). Rather, it covers "'those requirements without which the 'nature' of
the program would be 'fundamentally alter[ed].'"" <u>Id.</u> at 157 (quoting 28 C.F.R. §
35.130(b)(7)).

### i. Whether Mr. Sanchez meets DHS' Absolute Exclusion Criteria cannot be determined on the pleadings.

City Defendants have not established that Mr. Sanchez meets its formal
medical exclusion criteria, called "Absolute Exclusion Criteria." Defendants claim that
Mr. Sanchez meets these criteria because he "requires assistance using his wheelchair,"
uses "an oxygen tank" has "a urinary catheter," and has "limitations on his ability to
care for himself and independently manage activities of daily living." City Def. Mem at
21; Baez Decl. ¶¶ 7-8. However, while Mr. Sanchez relies on supplemental oxygen, it
is unclear whether he uses an "oxygen tank/cylinder" that contains "liquid or
compressed oxygen," which is prohibited, as opposed to "oxygen concentrators,"
which "are allowed." <u>See</u> Baez Decl. Ex. A. Even if Mr. Sanchez currently uses
impermissible oxygen, he might be able to switch to an oxygen concentrator.

In addition, the fact that Mr. Sanchez has "a urinary catheter" itself does not render him excludable. See id. Catheters only exclude an applicant if the individual cannot "independently manage" them. Id. City Defendants have not provided evidence that Mr. Sanchez cannot independently manage his catheters.

Moreover, while Mr. Sanchez needs regular assistance, he "can shower and groom himself." Compl. ¶ 39. Indeed, although DHS has rejected him as too disabled for a shelter placement, Mr. Sanchez has been rejected from nursing homes for being too able-bodied. See Compl. ¶ 100; Chrono at 11. And City Defendants have not submitted Mr. Sanchez' Patient Review Instrument or ADL Assessment Form to reveal their underlying medical assessments.

Accordingly, at this stage the Court cannot determine whether Mr. Sanchez meets DHS' Absolute Exclusion Criteria.

### ii. DHS' Absolute Exclusion Criteria are not essential eligibility requirements for homeless shelter placement.

Regardless, the Absolute Exclusion Criteria are not essential eligibility requirements for the New York City shelter system. New York City's right to shelter decree "obligates the [City] to provide temporary shelter to homeless individuals who either qualify for public assistance or whose need for temporary shelter results from physical, mental or social dysfunction." Callahan, 307 A.D.2d at 153 (emphasis altered); see Consent Decree, Callahan v. Carey, https://tinyurl.com/y5juftmh.

Accordingly, the essential eligibility criterion for the homeless shelter system is needing temporary shelter. Requiring the City to shelter people "regardless of need" would thus contravene the basic premise of the right to shelter. Callahan, 307 A.D.2d at 153. Yet City Defendants have offered no evidence that sheltering people with disabilities would fundamentally alter the nature of the homeless shelter system.

To the contrary, the right to shelter plainly encompasses the disabled. The right to shelter decree itself requires shelter for people with "physical" "dysfunction." Id. Indeed, DHS' own policy requires reasonable accommodations for shelter applicants' disabilities, including "modification[s]" to shelter facility "policies or practices." DHS Procedure 15-211. Moreover, the 2017 Butler settlement mandates that DHS "provide Reasonable Accommodations on an individualized basis" for shelter applicants with disabilities "in a manner that provides for meaningful access to shelter or shelter-related services, except where doing so would fundamentally alter the nature of the DHS Shelter System." Butler Settlement. If providing any accommodation to someone with disabilities like Mr. Sanchez would "fundamentally alter the nature of the City's shelters," City Def. Mem at 18, both DHS Procedure 15-211 and the recently-negotiated Butler settlement would be rendered meaningless.[4]

---

[4] To the extent that the shelter system's essential eligibility criteria constitute a factual dispute, the question cannot be resolved on a motion to dismiss.

\*\*\*

Finally, no matter the "essential eligibility requirements," the proper inquiry is not whether Mr. Sanchez currently meets such requirements, but whether he can meet them "with" "reasonable modifications." See 42 U.S.C. § 12131. As discussed infra Section II(C), Mr. Sanchez has alleged that he can do so.

For all of these reasons, Mr. Sanchez is a "qualified" individual with a disability.

## C. City Defendants can reasonably accommodate Mr. Sanchez' disabilities.

Mr. Sanchez has alleged the existence of facially reasonable accommodations that would allow him to meet the New York City shelter system's essential eligibility requirements. City Defendants offer no specific reasons why these accommodations would be a fundamental alteration in this case. And their blanket contention that any accommodation for someone with disabilities like his constitutes a fundamental alteration is plainly incorrect. Accordingly, Mr. Sanchez has plausibly alleged that City Defendants can reasonably accommodate his disabilities.

The ADA demands "affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 275 (2d Cir. 2003). As the Circuit has made clear, "it is not enough to open the door for the handicapped . . .; a ramp must be built so that the door can be reached." Id. (internal quotation marks and citation omitted). A reasonable accommodation thus may require making "changes to traditional rules or

practices." Reg'l Economic Comm. Action Program, Inc. v. City of Middletown, 294

F.3d 35, 53 (2d Cir. 2002) (internal quotation marks and citation omitted).

The plaintiff's prima facie burden of establishing the existence of a reasonable

accommodation "is not a heavy one." Borkowski v. Valley Cent. School Dist., 63 F.3d

131, 138 (2d Cir. 1995). "It is enough for the plaintiff to suggest the existence of a

plausible accommodation, the costs of which, facially, do not clearly exceed its

benefits." Id. At that point, "the risk of nonpersuasion falls on the defendant." Id.

The defendant's burden effectively merges with the affirmative defense "that the

proposed accommodation would cause it to suffer an undue hardship." Id. To satisfy

this burden, the defendant "must proffer specific reasons why allowing" the proposed

accommodation "would be unduly burdensome" under the individual circumstances

presented. Wright v. New York State Dep't of Corr., 831 F.3d 64, 79 (2d Cir. 2016).

This necessitates a "highly fact-specific, . . . case-by-case inquiry" that generally

"cannot be determined as a matter of law" on the pleadings. Mary Jo C., 707 F.3d at

165; accord Austin v. Town of Farmington, 826 F.3d 622, 630 (2d Cir. 2016) (whether

accommodation is reasonable requires "a full evidentiary record").

Here, Mr. Sanchez has plausibly alleged the existence of reasonable

accommodations. Mr. Sanchez asks City Defendants—in whatever way is feasible

within the confines of their budget and abilities—to "accommodate [his] disabilities in

the homeless shelter system." Compl. ¶ 128. This could include providing him with

wheelchair-accessible shelter space and someone to help him with certain daily tasks.

If no such placement currently exists in a shelter, Mr. Sanchez does not ask the City to create a nursing home shelter or wholesale alter the shelter system. Rather, he asks the City to "pay for [him] to live in a hotel room, or other residence, and for a home health aide until" his Medicaid and SSI benefits begin and/or a medically-appropriate placement becomes available. See id.[5]

Mr. Sanchez' proposed accommodations, thus, are a far cry from those cited in City Defendants' motion. See City Def. Mem at 21-23. He does not seek "assignment to a particular shelter"—only reasonable accommodations in some shelter placement. Cf. Jenkins v. New York City Dep't of Homeless Services, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009) (plaintiff, placed in mental health shelter based on diagnosis, did not have right to choose a particular (non-mental health) shelter; it was sufficient that he "was assigned shelter" through DHS) (emphasis added). Nor does Mr. Sanchez seek a new type of benefit for all individuals. Cf. Rodriguez v. City of New York, 197 F.3d 611 (2d Cir. 1999). Instead, he simply seeks what the ADA requires: that he, as a person with a disability, is "given the same opportunities and [is] able to enjoy the same benefits as other" homeless New Yorkers. Felix v. New York City Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003).

City Defendants have not met their burden of showing that Mr. Sanchez' proposed accommodations would fundamentally alter the nature of the DHS

---

[5] The availability of wheelchair-accessible shelter beds and non-dormitory-style rooms in apartments or hotels, as well as the cost of such options, are matters for discovery. See Austin, 826 F.3d at 630.

16

homeless shelter system. Indeed, City Defendants offer no specific reasons why these accommodations constitute a fundamental alteration given Mr. Sanchez' unique circumstances. Absent any such "individualized inquiry," City Defendants' "response [is] deficient." Wright, 831 F.3d at 78.

Further, City Defendants' contention that accommodating anyone whose medical conditions meet the Absolute Exclusion Criteria would be a fundamental alteration plainly fails. See City Def. Mem at 20-23. The U.S. Supreme Court has made clear that "[t]he simple fact that an accommodation would provide a 'preference'—in the sense that it would permit the [individual] with a disability to violate a rule that others must obey—cannot, in and of itself, automatically show that the accommodation is not 'reasonable.'" U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 398 (2002) (emphasis omitted). To the contrary, "requiring a [entity] to 'violate its own policies' is *precisely* what a reasonable accommodation may be and what federal law requires." Martinez by Martinez v. Lexington Gardens Ass's, 336 F. Supp. 3d 270, 281 (S.D.N.Y. 2018) (emphasis in original). Thus, the mere fact that DHS otherwise excludes people with Mr. Sanchez' disabilities cannot render his proposed accommodation unreasonable.[6]

Defendants' citation to Rose v. Rhorer, a non-controlling case, does not require a different conclusion. Rose centered on claims concerning how disabled individuals

---

[6] As discussed supra Section II(B), whether Mr. Sanchez satisfies the Absolute Exclusion Criteria is a question of fact.

applied for shelter placement. But the city's shelter system already had a "policy to accommodate people with disabilities on a case-by-case basis[.]" <u>Rose v. Rhorer</u>, No. 13-cv-03502, 2013 WL 5913656, at *1 (N.D. Cal. Oct. 31, 2013). Indeed, the court barred the claims in part because they were covered under a settlement that reformed that shelter system to comply with the ADA. See <u>Rose v. Rhorer</u>, No. 13-cv-03502, 2014 WL 1881623, at *4-5 (N.D. Cal. May 9, 2014). Here, in stark contrast, New York City disclaims <u>any</u> obligation to reasonably accommodate Mr. Sanchez' disabilities.

Finally, despite disclaiming a statutory duty to help DOCCS develop a medical discharge plan for Mr. Sanchez, <u>see</u> City Def. Mem at 16, City Defendants provide no reason why providing such assistance here would be a "fundamental alteration."

***

Mr. Sanchez has thus plausibly alleged that City Defendants are discriminating against him on the basis of his disabilities by failing to reasonably accommodate his medical needs in the homeless shelter system or otherwise temporarily house him.

### D. Mr. Sanchez states a claim under the Fair Housing Act.

Mr. Sanchez also states a claim under the FHA. City Defendants contend that the FHA does not apply because Mr. Sanchez is not a "buyer" or "renter."[7] <u>See</u> 42

---

[7] City Defendants do not appear to contest that a homeless shelter is a "dwelling" under the FHA. <u>See</u> <u>Step By Step, Inc. v. City of Ogdensburg</u>, 176 F. Supp. 3d 112, 126 (N.D.N.Y. 2016) ("homeless shelters . . . have been found to constitute dwellings under the FHA").

U.S.C. § 3604(f). However, as other courts have held, since federal government funding is "consideration" for shelter placement, the FHA covers the shelter system.

The FHA prohibits discrimination "to any buyer or renter because of a handicap," id. § (f)(1), as well as "against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap," id. § (f)(2). The FHA does not define "renter." However, it defines "to rent" as including "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602(e) (emphasis added). The Supreme Court instructs courts to give the FHA a "generous construction." Trafficante v. Met. Life Ins. Co., 409 U.S. 205, 212 (1972).

Plainly, the FHA does not require that "consideration" be given by the tenant. The statute only mandates that "a consideration" be given by someone. 42 U.S.C. § 3602(e). Accordingly, courts around the country have held that receipt of "federal funds" for homeless shelter services constitutes "consideration" in satisfaction of "the broad definition of 'to rent' set out in the statute." Hunter on behalf of A.H. v. District of Columbia, 64 F. Supp. 3d 158, 177 (D.D.C. 2014) (internal citations omitted). Resultantly, individuals may sue homeless shelters under the FHA. Id.; accord Anonymous v. Goddard Riverside Comm. Cntr., Inc., No. 96-cv-9198, 1997 WL 475165, at *3 n.4 (S.D.N.Y. July 18, 1997) (assuming federal grants "constitute consideration for plaintiff's housing"); Delfore v. City Rescue Mission of New Castle,

995 F. Supp. 2d 413, 419 (W.D. Penn. 2013) (allegation that shelter received "consideration for a resident's stay" sufficient to state FHA claim); Woods v. Foster, 884 F. Supp. 1169, 1175 (N.D. Il. 1995) (same); see Compl. ¶ 149 (alleging Defendants receive federal funding).

The cases cited by City Defendants are inapposite. City Defendants primarily rely on Jenkins, which independently determined that "rent" is limited to "consideration paid by the person who has the right to occupy the building." 643 F. Supp. 2d at 519; see also Forziano v. Ind. Group Home Living Program, Inc., No. 13-cv-0370, 2014 WL 1277912, at *24 n.5 (E.D.N.Y. Mar. 26, 2014) (relying on Jenkins analysis). However, on appeal the Second Circuit concluded "that the District Court erred in reaching the question of whether . . . [Plaintiff] is a "renter" under [the FHA]." Jenkins v. New York City Dep't of Homeless Services, 391 Fed. App'x 81, 83 (2d Cir. 2010). Accordingly, Jenkins does not control the Court's analysis here.

This Court should thus allow Mr. Sanchez' FHA claim to proceed.[8]

***

This Court should therefore allow Mr. Sanchez' federal law claims against City Defendants to proceed. Since Mr. Sanchez' state law claims are "so related" to his federal claims that "they form part of the same case or controversy," this Court "shall have supplemental jurisdiction" over such claims. 28 U.S.C. § 1367. City Defendants

---

[8] At the very least, this Court should assume without deciding that the FHA applies. See Jenkins, 391 Fed. App'x at 83.

provide no sound reason for this Court to decline to exercise jurisdiction over Mr.

Sanchez' state-law claims absent the [inappropriate] dismissal of his federal claims. See

City Def. Mem at 23-24.

## III.   PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED.

Even under a "heightened" standard, Mr. Sanchez has demonstrated that

preliminary injunctive relief is warranted here. Mr. Sanchez has clearly alleged

irreparable harm, a strong likelihood of success on the merits, and that the public

interest and equities weigh in his favor.

### A. Denying injunctive relief will cause irreparable harm.

Mr. Sanchez is suffering concrete, actual, and irreversible harm each moment

he remains incarcerated solely because he does not have an approved place to live.

City Defendants' efforts to minimize that harm based on Mr. Sanchez' housing

preferences and the timing of this lawsuit fail.

Even absent the presumption of irreparable harm from his constitutional

claims against State Defendants, Mr. Sanchez has plainly made a strong showing of

irreparable harm. As a result of City Defendants' failures to reasonably accommodate

Mr. Sanchez' disabilities, he remains in prison. This harm cannot be redressed

monetarily. See Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118

(2d Cir. 2009); ECF No. 7 at 23-25. Moreover, Mr. Sanchez' continued confinement

places his health in further peril. Studies show that the "traumatic experience of

incarceration and the fragmented medical care available" compounds health

conditions and shortens life spans. Urban Institute, <u>Aging Behind Bars</u> 4 (2014), https://urbn.is/2Umib7t.[9] Indeed, Mr. Sanchez' blood pressure levels put him at risk of another stroke. <u>See</u> Supp'l Frankel Decl. Ex. A, Blood Pressure Records; American Heart Association, <u>Understanding Blood Pressure Readings</u>, http://bit.ly/2WJTO5i (last visited June 13, 2019). These factors all establish irreparable harm.

The fact that a homeless shelter is not Mr. Sanchez' first housing preference does not make this harm any less irreparable. <u>See</u> City Def. Mem at 28. Indeed, the shelter system is, by its very nature, a last resort. <u>See</u> <u>Callahan</u>, 307 A.D.2d at 153. This case elucidates the necessity of the shelter system: Mr. Sanchez cannot be released until he obtains housing and currently has nowhere to go but a SARA-compliant shelter. Whatever his preferences, but for City Defendants' refusal to accommodate Mr. Sanchez' disabilities, he would be free today. <u>See</u> ECF No. 12.

Nor does the timing of this lawsuit counsel against a finding of irreparable harm. <u>See</u> City Def. Mem at 27. Courts are concerned with delays that are "unexplained." <u>Life Tech. Corp. v. AB Sciex Pte. Ltd.</u>, No. 11-cv-325, 2011 WL 1419612, at *7 (S.D.N.Y. Apr. 11, 2011); <u>see</u> <u>Hirschfield v. Bd. of Elections in City of</u>

---

[9] <u>See also</u> Aging Prisoners at 2 (prisoners are "medically older" than chronological age); L. Brinkley-Rubinstein, <u>Incarceration as a Catalyst for Worsening Health</u>, Health And Justice 1:3 (2013), https://doi.org/10.1186/2194-7899-1-3 (people in prison have higher likelihood of medical ailments than those outside of prison, along with decreased mortality); Peter Blanck, <u>Disability in Prison</u>, 26 S. Cal. Interdisc. L.J. 309, 312 (2017) (discussing increased risks for disabled prisoners); Steve Coll, <u>The Jail Health-Care Crisis</u>, The New Yorker (Feb. 25, 2019), http://bit.ly/31tjulA (describing lawsuits against Corizon Health, Coxsackie Correctional Facility's health care provider).

New York, 984 F.2d 35, 39 (2d Cir. 1993) (courts frown upon "inexcusable delay"). A delay is justified, however, in order to make "good faith efforts" to "investigate the facts and law." Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011). Further, even where delay deprives a plaintiff "of the presumption of irreparable injury," he may nevertheless "establish irreparable injury independent of the presumption." Markowitz Jeselry Co., Inc. v. Chapal/Zenray, Inc., 988 F. Supp. 404, 406-07 (S.D.N.Y. 1997) (emphasis added).

Here, Mr. Sanchez did not engage in undue or unexplained delay. As an initial matter, his harm did not occur only on May 31, 2016: it is ongoing and continuing. See City Def. Mem at 27. Indeed, Mr. Sanchez has been denied release based on his homeless status during each six-month medical parole re-appearance, as recently as December 2018. See Compl. ¶ 83.

Further, any delay was made in good faith. Mr. Sanchez understood that finding affordable, yet not federally-subsidized, SARA-compliant housing would be difficult. Thus, he did not sue immediately after his detention became prolonged. Instead, he consistently wrote to various DOCCS officials requesting information about, and documents elucidating, steps taken to find housing for him. See Supp'l Frankel Decl. Ex. C, Letters to DOCCS. When he finally received his Parolee Chrono report in January 2019, it became clear that no housing options were available, even in a homeless shelter. Counsel then wrote to DOH, DHS, and the Amsterdam Housing Authority requesting reasonable accommodations for Mr.

Sanchez. See id., Exs. B, D, E. Soon thereafter, Mr. Sanchez sued to vindicate his rights in court.

Thus, far from an "unexplained" delay, here the "intervening period has been consumed by constructive, responsible and accommodating efforts effort by [plaintiff and] legal counsel to resolve the matter without litigation." Clifford Ross Co., Ltd. v. Nelvana, Ltd., 710 F. Supp. 517, 521 (S.D.N.Y. 1989). Moreover, City Defendants have failed to allege any harm resulting from the delay. Cf. Hessel v. Christie's, Inc., 399 F. Supp. 2d 506, 520-21 (S.D.N.Y. 2005) (denying preliminary injunction where delay financially harmed defendant).

**B. The remaining preliminary injunction factors support relief.**

The remaining preliminary injunction factors support relief here. For the reasons discussed supra Section II and in his opening brief, Mr. Sanchez has demonstrated a "'clear' or 'substantial' showing of a likelihood of success" on the merits of his claims. See Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996). Likewise, the public interest and equities clearly counsel in favor of relief. See ECF No. 7 at 39-41. City Defendants have not provided any sound reason why they, or the general public, will be harmed by reasonably accommodating a paralyzed, wheelchair-bound man's disabilities within the shelter system, or otherwise providing him with temporary housing.

This Court should thus grant preliminary injunctive relief to allow Mr. Sanchez to benefit from his medical parole grant before his health suffers further.

## <u>CONCLUSION</u>

For all the foregoing reasons, Mr. Sanchez respectfully requests that the Court deny City Defendants' motion to dismiss his claims and grant the preliminary injunctive relief described in ECF No. 7 at 50-51.

Respectfully submitted,

Robert S. Dean
Center for Appellate Litigation
120 Wall Street, 28th Floor
New York, New York 10005
(212) 577-2523
afrankel@cfal.org
aeverett@cfal.org

By: <u>/s/ Allison Frankel</u>
*Of Counsel*

Abigail Everett
*Of Counsel*

*Counsel for Plaintiff*

Dated:      New York, NY
            June 14, 2019